366 West 127th Street, Inc., Landlord, *v.* " John " Lockhart, Tenant.

Gertrude Lipton, Landlord, *v.* Esse M. Starks, Tenant.

Andschirr Realty Corp., Landlord, *v.* Mary Palmer, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, March 3, 1952.

*David Fogel* for 366 West 127th Street, Inc., and another, landlords.

*Harry Salvan* for Andschirr Realty Corp., landlord.

No appearance for tenants.

Garrison, J. Each of the above-entitled holdover summary proceedings for the recovery of real property upon the return day of the precepts resulted in defaults by the respective tenants in appearing and answering, which defaults were noted, and forthwith the proof in support of the landlord's petition in each matter was taken upon inquest before the court; and landlords seek final orders of eviction in their favor.

The identical issue of law is presented in each proceeding; and upon the ultimate determination of the issue of law involved, by appellate courts or the Legislature, a guide will be afforded this Municipal Court in the disposition of an increasing volume of litigation of the same type, which purposes to bypass summary proceedings for nonpayment of rent (wherein a defaulting tenant has a right to redeem before issuance of the war-

rant) and substitute holdover summary proceedings (wherein the drastic relief of forfeiture of the tenant's estate results) as the common practice.

The instant proceedings are so-called "holdover" summary proceedings affecting housing accommodations. The respective petitions contain allegations of the prior service of the statutory notices and compliance by the landlords with the Rent and Eviction Regulations of the Temporary State Housing Rent Commission pursuant to sections 52 and 53 thereof. Each petition alleges that the tenant is a "month-to-month" tenant; that each tenant continued under the terms of the original agreement, and that the last month commenced and ended (on dates immediately preceding the institution of these summary proceedings); and that the said terms have expired. The proof taken upon the inquests shows (1) that numerous prior summary proceedings for nonpayment of rent were instituted against the tenants and resulted in final orders for the landlords; and (2) that the original tenancies resulted from oral lettings solely, and there were never any formal or written leasing agreements between the parties.

The landlords do not claim that the tenants became "statutory" tenants. There is no factual situation in these cases that the usual provisions and covenants of expired written leases are projected into these "month-to-month" tenancies. The tenancies in each case, therefore, are the ordinary month-to-month tenancies created by parol which are well known to local law and rest upon the agreement of the parties under the conventional relationship of landlord and tenant.

The grounds of eviction, the landlords allege to be in compliance with existing law and the rent regulations (Starks and Lockhart) and I quote: "This proceeding is brought on the ground that tenant fails and refuses to pay * * * rent when due until dispossess proceedings are brought in the Municipal Court and thus tenant has violated a substantial obligation of * * * tenancy, as stated, pursuant to Section 52 of the Rent Regulations." In the Palmer petition the ground of eviction is alleged, and I quote: "that the tenant has failed to pay the rent due on its due date and has compelled the landlord to institute summary proceedings for the purpose of collecting the said rent and that the tenant has violated a substantial portion of her obligation in that she has been consistently and regularly delinquent in the payment of her rents as they became due."

The issue of law presented, therefore, is whether the allegations of the petitions and proofs thereunder constitute a sufficient legal ground for eviction, entitling the landlords to a final order of this court in their favor. It is my considered opinion that the landlords are not so entitled as a matter of law and that the petitions ought to be dismissed upon the merits.

Under *local law* (the common law of landlord and tenant and the statutory provisions contained in Civ. Prac. Act, art. 83) so far as my research discloses, no right existed by a landlord to terminate a tenant's estate upon the grounds predicated in the instant cases except in those cases where formal leasing agreements existed enumerating the various covenants of each party to be performed and including a '' conditional limitation clause '' providing that upon breach of any covenant by the tenant including default in payment of rent when due, the landlord upon service of a notice reserved the right to cut off and terminate the tenant's term prior to the termination date stated in the lease. In cases arising under the exception just noted the remedy afforded the landlord was a holdover summary proceeding. In all other situations involving nonpayment of rent the landlord's remedy was by nonpayment summary proceedings or an action for the rent. Such '' holdover '' summary proceedings, where the right may have existed, rarely engaged the attention of the courts.

In nonpayment summary proceedings the tenant's right to redeem is the declared policy of the law — payment, before a final order or issuance of the warrant, defeating the eviction.

It should be observed, and this court is cognizant of the fact, that before rent controls were enacted a landlord by a proper notice of termination served upon his tenant for whatever reason, or without stating his reason, could thereafter secure an eviction of the tenant.

Since rent control legislation, commencing with congressional legislation and rent regulations in 1943, and thereafter New York City temporary rent controls in 1947, succeeded by State controls of housing accommodations, as well as of business and commercial space, a statutory ground of eviction first appears variously stated to be, where the tenant: (1) In Office of Price Administration (O.P.A.) Housing Regulations 1388.1281 (§ 6, subd. [a], par. [3], cl. [i]) '' (i) has violated a substantial obligation of his tenancy, other than an obligation to pay rent ''. It is significant that the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*)

did not enumerate or define specific grounds of eviction; and the ground — violation of a substantial obligation of the tenancy — is promulgated for the first time by the administrator. (2) Under the National Housing and Rent Act of 1947 (§ 209, subd. [a], par. [1], cl. [A]; U. S. Code, tit. 50, Appendix, § 1899, subd. [a], par. [1], cl. [A]) " is violating the obligation of his tenancy (other than an obligation to pay rent higher than rent permitted under this Act * * *) ". (3) And the regulations of the Office of Housing Expediter (April 1, 1949) (§ 825.6, subd. [a], par. [1]) : " is violating a substantial obligation of his tenancy, other than an obligation to pay rent ". (4) In Local Laws of 1947, No. 66 of the City of New York (Administrative Code of City of New York, § U41–7.0, subd. c, par. [1]) " is (a) violating an obligation of his tenancy other than an obligation to pay rent higher than the maximum rent which the landlord is legally entitled to demand or receive ". (5) Temporary City Housing Rent Commission Regulation II (art. II, § 5, subd. [a], par. [1]) " is violating a substantial obligation of his tenancy " (rent not mentioned). (6) Under existing New York State Residential Rent Law, (§ 5, subd. 1, par. [a], as amd. by L. 1951, ch. 443) " is violating a substantial obligation of his tenancy other than the obligation to surrender possession ". (7) Subdivision 1 of section 52 of part V of the Rent and Eviction Regulations of the Temporary State Housing Rent Commission follows the wording of the statute above mentioned.

This development of the theory of the statutory right to evict based upon a " violation of a substantial obligation of a tenant " is understandable, under the theory of rent controls; but it is shifting, and uncertain, and leaves much that is desirable in ascertainment of the true legislative intent which is all that a court may probe.

With the experimentation and enforcement in the field of rent controls, with the deliberations of various legislatures and their committees, national, city and State, as a guide, it is noteworthy that the New York State Residential Rent Law prescribes but one exception for which a tenant may not be evicted for a violation of a substantial obligation, namely an obligation to surrender possession. It would seem so, from the language used. However, examination of the same Legislature's repeated enactments in the field of business and commercial space controls is very significant and must be considered, and must not be overlooked in defining a " substantial obligation of a tenant " of housing accommodations. The original

statutes — chapters 3 and 315, and 314 of the Laws of 1945 (N. Y.) and all acts amendatory thereto (including L. 1951, chs. 430, 431) define in paragraph (1) of subdivision (b) of section 8 the " obligation ", or declare as ground for eviction, where — and I quote: " The tenant (1) has violated a substantial obligation of his lease, rental agreement or tenancy, other than an obligation to pay rent ". Clearly, then, if the tenants in these instant proceedings were business or commercial space tenants there would exist no grounds for eviction in holdover summary proceedings.

Analysis of all of the above statutes and regulations demonstrate the conflict and uncertainty that attends the creating and defining of a tenant's substantial obligation respecting the payment of rent under a rent control system. No definite clear policy is enunciated in such a vital matter as grafts a new theory of " violation by a tenant of a substantial obligation " as to payment of rent upon an otherwise definite concept of well-settled law.

The " conflict " in the New York statutes on the precise question involved in separate fields of rent controls results from the definitions by the same Legislature of seemingly different obligations imposed upon tenants. Does the Legislature intend that the tenants of business properties be less harshly treated than tenants of housing accommodations? — and have a different obligation? I think our Legislature intended to treat all equally and all to be equally bound. The same obligations it would seem should rest upon all who are tenants in respect of the substantial obligations assumed by them and flowing from the tenancy unless it is clearly and definitely stated to be otherwise.

The case law of which I am aware is the decision in the Supreme Court, Kings County (NovA, J., 1949) in *Sanfilippo* v. *Costa* (91 N. Y. S. 2d 738); another decision of the Supreme Court, New York County (KOCH, J.) in *38 West 59th St., Inc.,* v. *Temporary City Housing Rent Commission* (N. Y. L. J., Nov. 3, 1949, p. 1112, col. 6); and a decision by the Appellate Term, 2d Dept., in *Dargin Realty Co.* v. *Sperling* (N. Y. L. J., Dec. 8, 1950, p. 1508, col. 6.) which affirmed a final order for the landlord. No question as to construction of the statute appears to have been raised or determined in any of those cases. The statutes referred to affecting rent control are in derogation of the common law and the Civil Practice Act in the matter of substantial obligations of a tenant and are to

be strictly construed. It is my opinion in the situations presented that it is the province and the duty of the Legislature to declare the policy of the law and to define the substantial obligations of a tenant respecting payment of rent for violation of which he may be evicted.

For the reasons above, I deny final orders to the landlords in each proceeding and dismiss the petitions as a matter of law upon the merits.